UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

VERSUS                                            NO. 19-041

JOHN MURRAY                                       SECTION "L"

**ORDER & REASONS**

Pending before the Court is John Murray's Motion for Compassionate Release. R. Doc. 31. The government opposes the motion. R. Doc. 35. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

I. **BACKGROUND**

On June 13, 2019, John Murray appeared before this Court and pleaded guilty to count one of an indictment charging him with bank robbery in violation of Title 18, United States Code § 2113(a). R. Doc. 29. On October 17, 2019, Mr. Murray was sentenced to forty-one months in the custody of the Bureau of Prisons. R. Doc. 29 at 2. Mr. Murray was also sentenced to a three-year term of supervised release following his release from custody. R. Doc. 29 at 3. Mr. Murray was also ordered to pay $500 in restitution. R. Doc. 29 at 5. At the time of writing, Mr. Murray has completed 46% of his sentence and is scheduled to be released on January 14, 2022. R. Doc. 35 at 1, 2.

II. **PRESENT MOTION**

Mr. Murray has filed the instant *pro se* motion requesting either compassionate release or home confinement in light of the ongoing outbreak of COVID-19. R. Doc. 31. Mr. Murray explains that he is vulnerable to the virus because of his age, as he is 67 years old, and his underlying medical conditions, which include high blood pressure, arthritis requiring pain medication, and a

1

2018 injury to his left foot. *Id.* at 1. Additionally, Mr. Murray explains that for over a year, he has suffered from itching throughout his entire body, a condition the medical staff at his facility has been unable to diagnose, as they are not equipped with proper testing. *Id.* at 2. Mr. Murray also alleges that "this facility have had several inmates with Covid-19 and [Mr. Murray is] right in the middle of it," and "social distance is not easy among 150 people in one unit." *Id.* Further, Mr. Murray explains that he has "been on good behavior" with no incidents. *Id.*

The government has filed an opposition to Mr. Murray's motion for sentence reduction. R. Doc. 35. First, the government argues that Mr. Murray does not meet the requirements for compassionate release because he has not exhausted his administrative remedies nor has he "demonstrated 'extraordinary and compelling reasons' to warrant release," or demonstrated that he "'is not a danger to the safety of any other person or to the community.'" R. Doc. 35 at 9, 18, 22. Second, the government argues that the Court lacks the authority to order home confinement, nor does it have the authority to direct BOP to do so. R. Doc. 35 at 22-23.

## III. LAW & DISCUSSION

### A. Motion for Compassionate Release

In relevant part, 18 U.S.C. § 3582(c)(1)(A) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that-- (1) in any case-- (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Although the statute does not define "extraordinary and compelling reasons," the

Sentencing Commission has issued a policy statement addressing the issue. *See* U.S.S.G. § 1B1.13. Specifically, the policy statement suggests that, provided a defendant does not pose a danger to the community, extraordinary and compelling reasons may exist where (1) the defendant suffers from a terminal illness or a serious condition that substantially impairs his ability to provide self-care within a correctional facility and from which he is not expected to recover; (2) the defendant is over sixty-five, is rapidly deteriorating in physical or mental health due to his age, and has served at least ten years or over seventy-five percent of his sentence; or (3) the defendant's family circumstances have changed due to the death or incapacitation of the caregiver of defendant's minor children or the incapacitation of his spouse or partner if he would be the only available caregiver for that spouse or partner. Additionally, the policy statement sets forth a fourth "catch-call" reason whereby an extraordinary or compelling reason exists where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*

In sum, courts routinely consider three requirements when determining whether compassionate release is appropriate: (1) whether the defendant has exhausted administrative remedies; (2) whether extraordinary and compelling reasons exist; and (3) whether defendant poses a danger to the safety of any other person or society. The defendant bears the burden of demonstrating that these elements are satisfied. *United States v. Davis*, No. CR 07-357, 2020 WL 2838588, at *2 (E.D. La. June 1, 2020). The Court considers each in turn.

    **B. Exhaustion**

As noted above, the Court must first be satisfied that the defendant has exhausted his administrative remedies or waited thirty days from filing a request that the warden of his facility

bring a motion on his behalf before seeking judicial relief. In entertaining other motions for compassionate release, this Court has agreed with the majority of courts in concluding that this exhaustion requirement is mandatory. *See, e.g.*, *United State v. Reed*, No. CR 15-100, 2020 WL 2850145, at *3 (E.D. La. June 2, 2020); *see also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (characterizing failure to exhaust administrative remedies as "a glaring roadblock foreclosing compassionate release at this point").

The government first argues that Mr. Murray is ineligible for compassionate release because he has not petitioned the warden of his facility to bring a motion on his behalf. R. Doc. 35 at 8. Specifically, the government acknowledges that Mr. Murray "administratively requested home confinement under the [CARES] Act," and "did not receive a response from the warden because he was deemed ineligible because he does not satisfy the criteria for BOP's discretionary Home Confinement determination." R. Doc. 35 at 2. The government argues Mr. Murray did not meet the BOP's discretionary standard because he "has only served 46% of his sentence and does not meet the risk of recidivism standard." R. Doc. 35 at 2.

The government has provided the Court with a copy of the communication Mr. Murray sent the warden of his facility. R. Doc. 35-1. On April 16, 2020, Mr. Murray sent the warden of FCI Yazoo Low a letter titled "Cares Act Release Petition." R. Doc. 35-1 at 1. In the letter, he explains that the CARES Act authorizes the BOP to lengthen the amount of time an inmate may be placed on home confinement and that Attorney General William Barr has directed the BOP to prioritize home confinement where possible. R. Doc. 35-1 at 1. Mr. Murray explains that in his understanding, he is at risk of catching COVID-19 because of his age, high blood pressure,

arthritis, and undiagnosed medical condition. The operative question is, therefore, whether Mr. Murray's letter to the warden constitutes a request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A).

Courts that have considered this question have reached different conclusions. It appears as though the majority of courts have held that a request similar to Mr. Murray's does not trigger the thirty-day clock because the BOP exercises its authority to order home confinement and file a compassionate release motion on a defendant's behalf under different statutes. *See, e.g.*, *United States v. Brown*, No. CR 13-286, 2020 WL 3292874, at *2 (E.D. La. June 18, 2020) (holding that that administrative remedies had not been exhausted where the defendant had emailed the warden inquiring into his eligibility for relief under the CARES act because compassionate release is not governed by the CARES Act); *United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at *2 (S.D. Ohio May 7, 2020) (denying compassionate relief on administrative grounds where defendant had petitioned the warden for home confinement, not release due to extraordinary and compelling reasons under § 3582(c)(1)(A)(i)); *United States v. Allen*, 2020 WL 2199626, at *1 (S.D. Ga. May 6, 2020) ("It is important to understand that a request for home confinement under the CARES Act is different than a Reduction-In-Sentence (RIS) request based upon compassionate release.").

In contrast, some courts have held that a request for home confinement under the CARES Act can constitute a request to the warden sufficient to satisfy § 3582(c)(1)(A)(i). In general, these courts are guided by policy principles rather than statutory fidelity. In particular, these courts note that *pro se* inmates cannot, and should not, be held to the standard of an attorney in their filings. For example, in *United States v. James*, the court determined that a motion for compassionate release was properly before the court because more than thirty days had passed since the defendant

presented the warden of his facility with a request for home confinement. No. 15-CR-00255 (SRN), 2020 WL 3567835, at *4 (D. Minn. July 1, 2020). In so finding, the court agreed with defendant's argument that as a *pro se* litigant with "sever mental illness and 'lack of sophistication,' his administrative request should be construed broadly, rather than strictly 'as though he were a trained lawyer.'" *Id.* at *3. The court also noted that the probation office had, in its compassionate-release-plan investigation, "construed the BOP's response as a denial for a 'request' for 'compassionate release.'" *Id.* at *4; *see also United States v. Fowler*, No. 17-CR-00412-VC-1, 2020 WL 3034714, at *1 (N.D. Cal. June 6, 2020) (considering an email from a defendant to her warden inquiring about home confinement in light of COVID-19 as a sufficient petition because "[p]risoners cannot reasonably be expected, and should not be required, to distinguish between these twin mechanisms [home confinement and compassionate release] when submitting their requests to the warden").

Other courts holding similarly have focused on the substance of the inmate's request and held that a request for home confinement satisfies the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A) when the warden "would have understood . . . [the] request to encompass a request for compassionate release even though it only specifically referred to the CARES Act." *United States v. Carr*, No. 1:13CR00034-001, 2020 WL 2847633, at *3 (W.D. Va. June 2, 2020), *reconsideration denied*, No. 1:13CR00034-001, 2020 WL 3566845 (W.D. Va. July 1, 2020). Rather than considering whether the defendant used certain "magic words" in making their request, these courts consider whether the request generally complied with 28 C.F.R. § 571.61, which outlines the procedure for the initiation of a compassionate release request based on extraordinary and compelling circumstances. *Compare Carr*, 2020 WL 2847633, at *3 (holding that an email from an inmate to his warden referencing the CARES Act and his susceptibility to COVID-19

6

based on preexisting health conditions triggered the 30-day clock because the request largely complied with 28 CFR 571.61); *with United States v. Williams*, No. 3:07-CR-0285-B-2, 2020 WL 3843737, at *2 (N.D. Tex. July 8, 2020) (holding that defendant had not exhausted his administrative remedies where his email request "fail[ed] to meet the minimum standards needed to initiate a request for compassionate release as required under § 571.61").

Although the Court recognizes merit to both sides of this issue, it nevertheless concludes that Mr. Murray has not exhausted his administrative remedies. Even assuming, without deciding, that his email requesting home confinement under the CARES Act could trigger the application of the thirty-day clock in certain circumstances, such circumstances do not exist here. In particular, 28 C.F.R. § 571.61 requires internal requests for compassionate release to set forth "at a minimum":

> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
>
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61(a). As the *Carr* court pointed out, "[t]he regulation does not provide that a request must specifically use the words "compassionate release" or "early release" or that it must reference the applicable statute." 2020 WL 2847633, at *3.

Here, Mr. Murray submitted a letter to the warden of FCC Yazoo City Low on April 16, 2020 titled "Cares Act Release Petition," articulating that he may be entitled to relief based on his advanced age and underlying medical conditions. He explains that he has behaved well while incarcerated and taken advantage of residential treatment programs at the Court's urging. He also outlines his post-incarceration goals, which include starting an organization to keep senior citizens

in his community physically and socially active. While Mr. Murray's internal request describes the reasons for which he believes he may be entitled to relief and identifies post-release goals, he does not mention any specific proposed release plans that would allow the warden or the Court to evaluate whether his release into society would be feasible. Due to these deficiencies, the Court concludes that Mr. Murray's has not exhausted his administrative remedies as required by 28 C.F.R. § 571.61(a) and 18 U.S.C. § 3582(c)(1)(A).

### C. Extraordinary and Compelling Reasons

Even if Mr. Murray had complied with the mandatory procedural requirements set forth in 18 U.S.C. § 3582(c)(1)(A), compassionate release would not be warranted because Mr. Murray has failed to articulate "extraordinary and compelling reasons" necessary to warrant such relief. According to the Sentencing Commission, extraordinary and compelling reasons can include an inmate's medical condition, age, family circumstances, or "other reasons." U.S.S.G. § 1B1.13. An inmate's medical condition qualifies if (1) he suffers from a terminal illness of a serious physical or medical condition that substantially impairs his ability to provide self-care within a correctional facility and from which he is not expected to recover. An inmate's age qualifies if (2) he is over sixty-five, is rapidly deteriorating in physical or mental health due to his age, and has served at least ten years or over seventy-five percent of his sentence.

With respect to COVID-19-releated motions, courts typically require an inmate to demonstrate "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *James*, 2020 WL 3567835 (quoting *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases)). "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on

compassionate release, U.S.S.G. § 1B1.13.23." *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)).

The Court concludes that Mr. Murray has not identified extraordinary and compelling reasons that justify compassionate release. Although Mr. Murray is sixty-seven years old, he has served less than half of his sentence. Additionally, although he suffers from high blood pressure, arthritis, and an undiagnosed medical condition, these conditions are not life-threatening, nor do they appear to substantially diminish his ability to provide self-care while incarcerated. *See United States v. Mazur*, No. CR 18-68, 2020 WL 2113613, at *4 (E.D. La. May 4, 2020) (denying compassionate release where defendant did not assert that BOP was unable to provide adequate medical care). Moreover, although the Center for Disease Control and Prevention has indicated that individuals are more vulnerable to contracting and developing a serious illness from COVID-19 as they age and that individuals with high blood pressure "might be at increased risk" of the same, there is no evidence that Mr. Murray's high blood pressure is severe or that the medical staff in his facility is ill-equipped to treat his relatively common ailments.[1] These are not extraordinary and compelling reasons, particularly in light of the fact that the BOP currently reports only one confirmed coronavirus infection at this time at the facility in question.[2]

Because the Court concludes that Mr. Murray has not demonstrated extraordinary and compelling reasons for his release, it declines to consider whether his release would pose a danger

---

[1] *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 13, 2020).

[2] *See* Federal Bureau of Prison, "Covid-19 Coronavirus: Covid-19 Cases," https://www.bop.gov/coronavirus/ (last visited July 13, 2020).

to the community.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Mr. Murray's Motion for Compassionate Release **is DENIED WITHOUT PREJUDICE** to his right to refile after exhausting his administrative remedies or if his circumstances change.

New Orleans, Louisiana this 15th day of July, 2020.

_____
Eldon E. Fallon
United States District Court

CC: John Murray
#37758-034
Yazoo City Low
P.O. Box 5000
Yazoo City, MS 39194